# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-1937

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TIMOTHY R. STOTTS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 99-CR-180—**Lynn Adelman**, *Judge.*

ARGUED JANUARY 14, 2003—DECIDED MARCH 20, 2003

Before EASTERBROOK, RIPPLE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* At his trial on charges of possessing cocaine base, or "crack," with intent to distribute and conspiracy to do the same, Timothy Stotts proposed the following instruction to assist the jury in determining whether he committed the crime of conspiracy:

As a matter of law, membership in a conspiracy depends on the accused's own acts and words. Co-conspirator statements determined to be admissible by the trial judge may be considered by the jury to decide what the defendant did and said, or to help understand the defendant's acts and words, but it is only the de-

> fendant's own acts and words upon which the jury can rely for evidence that the defendant was a member of the conspiracy.

The district court rejected Stotts's request. It was correct to do so.

The proposed instruction falters in its final clause, which closely tracks former § 5.11 of the *Federal Criminal Jury Instructions of the Seventh Circuit* (1980). In *United States v. Martinez de Ortiz*, 907 F.2d 629 (7th Cir. 1990) (en banc), we held that former § 5.11 was inconsistent with Rule 104 of the Federal Rules of Evidence and *Bourjaily v. United States*, 483 U.S. 171 (1987), in that it invited the jury to second-guess the district court's decision to admit coconspirator declarations as evidence that the accused joined the conspiracy, and misstated the law of conspiracy.

Admissibility of evidence is a question for only the judge, not the jury. Fed. R. Evid. 104(a). Out-of-court declarations made by coconspirators of the accused during the course and in furtherance of a conspiracy are not hearsay and are admissible. Fed. R. Evid. 801(d)(2)(E). Of course, such declarations are admissible only if the accused was engaged in a conspiracy with the declarants, and determining whether the accused committed the crime of conspiracy is the province of the jury. Rule 104(b) preserves both the proper role of the judge in determining whether out-of-court coconspirator declarations are admissible and the proper role of the jury in determining whether the accused is guilty of conspiracy. Under Rule 104(b), the district court may conditionally admit coconspirator declarations if it finds by a preponderance of the evidence that the accused was a member of the conspiracy and the declarations were made in the course and in furtherance of the conspiracy. *Bourjaily*, 483 U.S. at 175. In making this preliminary factual determination, the district court

is free to rely on the out-of-court declarations of the putative coconspirators. *Id.* at 178. Once the declarations are so admitted, the jury's role is to decide whether the declarations, in conjunction with the rest of the evidence, prove sufficiently that the accused committed the crime of conspiracy. *Martinez de Ortiz*, 907 F.2d at 634-35.

In addition to conflicting with Rule 104 and *Bourjaily*, Stotts's proposed instruction misstates the law. While it is true that only the accused's own words or acts may be considered to determine whether he committed the crime of conspiracy, the jury may consider properly admitted statements of the accused's coconspirators to determine *what* the defendant did or said, or to help understand the accused's own words or acts. *United States v. Espino*, 32 F.3d 253, 259 (7th Cir. 1994); *United States v. Loscalzo*, 18 F.3d 374, 383 (7th Cir. 1994); *United States v. Goines*, 988 F.2d 750, 772 (7th Cir. 1993); *United States v. Brown*, 940 F.2d 1090, 1094 (7th Cir. 1991); *Martinez de Ortiz*, 907 F.2d at 633-35; 7th Cir. Pattern Crim. Fed. Jury Instr. § 5.08, cmt. (b). The final clause of the proposed instruction suggests that the jury could not consider the out-of-court declarations of Stotts's coconspirators as evidence of his membership in the conspiracy.

After rejecting Stotts's proposed instruction, the district court gave the jury this circuit's pattern instruction on conspiracy,[1] but did not give an instruction to assist the

---

[1] Seventh Circuit Pattern Criminal Federal Jury Instruction § 5.08 provides:

> A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose. To sustain the charge of conspiracy, the government must prove:

> First, that the conspiracy as charged in Count One existed, and

(continued...)

jury in its evaluation of coconspirator declarations. Stotts contends that he was prejudiced by the trial judge's failure to give the jury a correct "only the acts and statements" instruction, similar to the one he proposed. Because Stotts made no objection, our review is limited to plain error, Fed. R. Crim. P. 30(d); *Jones v. United States*, 527 U.S. 373, 388 (1999), meaning that we may correct a clear or obvious error only if it affected substantial rights and seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Smith*, 308 F.3d 726, 743 (7th Cir. 2002).

We have cautioned trial judges to provide sufficient guidance to juries on the nuanced principles of conspiracy law. *See Goines*, 988 F.2d at 772; *United States v. Collins*, 966 F.2d 1214, 1224 (7th Cir. 1992); *Martinez de Ortiz*, 907 F.2d at 635. We set out an illustrative instruction in *Martinez de Ortiz, supra.* Although we did not mandate its use, we suggested that trial judges give the instruction in appropriate cases, such as where the evidence that the

---

[1] (...continued)

Second, that the defendant knowingly became a member of the conspiracy with an intention to further the conspiracy.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

To be a member of the conspiracy, the defendant need not join at the beginning or know all the other members or the means by which its purpose was to be accomplished. The government must prove beyond a reasonable doubt that the defendant was aware of the common purpose and was a willing participant.

defendant committed the crime of conspiracy is based largely on the declarations of coconspirators. *See id*.

This is not a particularly strong a case for the instruction because Stotts's role in the conspiracy was sufficiently established by more than just an out-of-court coconspirator declaration. The evidence was provided almost exclusively through the testimony of Robin Broeske, a Special Agent with the Wisconsin Department of Justice who investigated Stotts undercover for drug trafficking. A confidential informant had agreed to introduce Broeske to Stotts through a woman known only as "Unwitting Female #1" (whom we will refer to as "Jane Doe" throughout the remainder of this opinion), in order to set up a drug transaction. Broeske made it known through Jane Doe that she was in the market to buy an ounce of crack. Doe directed Broeske and the informant to drive her and another woman known as "Unwitting Female #2" (whose role in this case in not clear from the record) to a house on North 21st Street in Milwaukee, Wisconsin. Once there, Doe directed Broeske to drive to another building on North 27th Street, where Stotts ran a legitimate business called "Fat 4 Ever Records." Stotts's brother Trenton was standing in the parking lot as they arrived. Doe exited the car, asked Trenton if Stotts was inside, and entered the building. Some time later she emerged from the building and told Broeske that Stotts had agreed to sell Broeske an ounce of crack for $1,200, that the crack was "ready," and that she could pick it up at another location. Stotts himself then emerged from the building and climbed into a car with his brother. As the two drove away, Stotts motioned for Broeske to follow.

They proceeded to a second house on North 21st Street. Stotts went inside. While waiting for him to return, Broeske began haggling with Doe over the price of the crack. Stotts exited the house and approached Broeske's vehicle. Doe announced to Stotts that Broeske wanted to see the

drugs before paying because the price was steep. Stotts nodded his head in agreement. Stotts and his brother then led Broeske to a house on North 29th Street. After a brief stop, Stotts gestured for Broeske to follow him to yet another location, this time a fortified drug house on North 25th Street. Once there, Trenton exited his car and instructed Broeske, the informant, and Doe to follow him inside. Stotts stayed with Trenton's car, moving it down the street as Trenton and the others entered the drug house. Once inside, Trenton placed a bag containing the drugs on a table. Broeske attempted to renegotiate the price, but Trenton refused to budge. Broeske then produced the $1,200, and Trenton instructed her to hand the money to Doe. Doe and Trenton then took the money to another room to count it. Once they finished, all four left the house. As they emerged, Stotts pulled up in front of the house to pick up his brother.

Broeske never testified that Stotts actually or constructively possessed the drugs. But because Stotts was charged both with the substantive offense of possession with intent to distribute and conspiracy, if he was a member of the conspiracy he is vicariously liable for each substantive offense committed by his coconspirators in furtherance of the conspiracy. *See Pinkerton v. United States*, 328 U.S. 640, 647 (1946); *United States v. Sandoval-Curiel*, 50 F.3d 1389, 1392 (7th Cir. 1995). Thus, Broeske's testimony that Trenton actually or constructively possessed and intended to distribute the drugs was relevant evidence against Stotts, so long as there was sufficient evidence for the jury to find that Stotts was a member of the conspiracy. *See Martinez de Ortiz*, 907 F.2d at 635. In addition to relaying Jane Doe's out-of-court declaration that Stotts had agreed to sell Broeske an ounce of crack for $1,200, Broeske testified that she observed Stotts accompanying Trenton immediately before and after the transaction; twice gesturing for her to follow

him to the location of the drugs; and nodding his head in agreement for her to inspect the drugs before paying. Because Stott's role in the conspiracy was sufficiently established by more than out-of-court coconspirator declarations, the district court's failure to give an instruction similar to that set out in *Martinez de Ortiz* did not affect the outcome of the trial.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*